UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| vs. | : | CR. No. 04-80S |
| | : | |
| ROCCO P. DESIMONE | : | |

**MOTION OF DEFENDANT ROCCO P. DESIMONE FOR BAIL PENDING APPEAL**

Defendant Rocco P. DeSimone, by his attorney, moves pursuant to 18 U.S.C. § 3143(b) and *United States v. Hochevar,* 214 F.3d 342 (2nd Cir. 2000), *cert. denied,* 534 U.S. 823 (2001) for bail pending appeal of his conviction for one count of filing a false tax return in violation of 26 U.S.C. § 7206(1).

He makes this motion on the ground that he is not likely to flee; he does not pose a danger to the safety of any other person or to the safety of his community; and he is raising at least one substantial question on appeal that is likely to result in reversal or an order for a new trial.

Defendant states his reasons more fully in the appended memorandum of law, which he incorporates herein by reference.

WHEREFORE, defendant asks that his motion be granted.

Respectfully submitted,
ROCCO DESIMONE
By his attorneys,

KEVIN J. BRISTOW (#3984)
1309 Turks Head Building
Providence, RI 02903
(401) 521-2800

JOHN A. MACFADYEN (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
(401) 751-5090

CERTIFICATION

I hereby certify that I mailed a copy of this Motion to Luis M. Matos, Esq., Assistant United States Attorney, United States Attorney's Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903, on the 10th day of February, 2006.

Ellen Taylor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| vs. | : | CR. No. 04-80S |
| | : | |
| ROCCO P. DESIMONE | : | |

**MEMORANDUM OF DEFENDANT ROCCO P. DESIMONE IN SUPPORT OF HIS MOTION FOR BAIL PENDING APPEAL**

**Introduction**

Defendant Rocco P. DeSimone has moved under 18 U.S.C. § 3143(b) for bail pending appeal of his conviction on one count of filing a false tax return in violation of 26 U.S.C. § 7206(1). Two of the three prerequisites for bail under § 3143(b) are not seriously in question: Mr. DeSimone is neither a danger to the community nor a flight risk. The only real question is whether there is a close question of law or fact likely to result on appeal in reversal or an order for a new trial. 18 U.S.C. § 3143(b)(1)(B). At least one issue in this case is substantial under this standard.

Filing a false tax return is a specific intent crime, requiring proof that defendant had a "specific intent to violate the law." *Cheek v. United States,* 498 U.S. 192, 200 (1991); *accord,* Tr. 3/21/05 at 161 (jury instructions). If defendant signed his tax return believing that it complied with the requirements of the tax code, he was not guilty of the charged crime. *Id.* Therefore, any evidence suggesting that he had reason for such a belief was relevant and exculpatory.

Defendant tendered such evidence through attorney, Richard Corley, but his offer was rebuffed. Mr. Corley was asked to recount a conversation he had with defendant in which defendant asked for and received professional advice from his accountant, Michael Corrado,

concerning the tax consequences of the income he was alleged to have under-reported. This Court sustained a hearsay objection to the line of questioning.

The proffered statements, however, were not excludable hearsay. Mr. Corrado's advice was not hearsay at all. This advice was offered, not for its truth, but for its impact on defendant's state of mind. If defendant acted in reliance on this professional advice, he could not have acted "willfully" within the meaning of the statute.

Defendant's own statements seeking that advice were either non-hearsay (*e.g.,* a request for assistance), or they were subject to the state-of-mind exception to the hearsay rule under F.R.Evid. 803(3) (*e.g.,* his statement that sought assistance because he was concerned about the proper handling of the money). If Mr. DeSimone was concerned about the proper handling of the art sale income, he was unlikely to be intending to defraud the IRS by under-reporting that income, which is what the Indictment charged.

And Mr. Corley's testimony was admissible in any case to discredit Mr. Corrado, who gave testimony materially inconsistent with what Mr. Corley would have said.

Exclusion of exculpatory intention evidence in a specific intent case cannot be harmless. This evidence was so central to the defense, in fact, that the failure to permit this cross-examination likely resulted in violation of defendant's Fifth and Sixth Amendment rights of confrontation and to present a defense.

Defendant will discuss each of these points *seriatim.*

**<u>No Flight Risk or Danger to the Community</u>**

There is no question here of danger or flight risk. Defendant stands convicted of one count of a non-violent, white collar crime. He is a lifelong resident of Rhode Island who has lived in Johnston for over twenty years with his wife of twenty-six years and three children, ages

23, 21 and 14. Since his conviction, his sister-in-law has contracted stage IV breast cancer and is very ill and in need of care. She lives with her mother, who has Alzheimer's and also needs care. As a result, defendant's wife, Gail DeSimone, has assumed responsibility for caring for both her mother and her sister as well as her own family. In addition, in a month, defendant's mother will be leaving the nursing home where she has been residing. She, too, will then require care. *Affidavit of Gail DeSimone* (attached).

Defendant was bailed throughout the trial proceedings and appeared for every hearing, including sentencing, when he knew he faced a substantial prison term. He was sentenced to serve 27 months. He self-surrendered on September 26, 2005, and has already served over four months of this sentence.[1]

**Close Question**

Section 3143 of Title 18 provides for bail pending appeal when the appeal raises a "substantial question of law or fact likely to result in (i) reversal, [or] (ii) an order for a new trial, ..." The Court of Appeals for the First Circuit has interpreted the term "substantial question" to mean "'a 'close' question or one that very well could be decided the other way.'" *United States v. Bayko,* 774 F.2d 516, 523 (1st Cir. 1985), quoting *United States v. Giancola,* 754 F.2d 898 (11th Cir. 1985). "Likely to result in reversal" is simply a reformulation of the requirement that the error not be harmless or unprejudicial. *Id.* at 522. This standard "is applied flexibly." *United States v. Colon-Munoz,* 292 F.3d 18, 20 (1st Cir. 2002).

The exclusion of the intention evidence at issue here meets and exceeds the "close question" standard. This Court sustained hearsay objections to cross-examination of attorney Richard Corley concerning defendant's efforts to get professional advice about whether the

[1] The transcript of his trial was not available until early January, 2006, which delayed presentation of his bail motion.

payment to attorney Williams for settlement of a lawsuit (the Williams payment) was deductible from proceeds of the sale of three paintings to Mr. Joyce (the art profit). Tr. 3/16/05 at 144-151 (copies attached).

Defense counsel made an offer of proof, stating that, if permitted to testify, Mr. Corley would say that defendant told him to call Mr. Corrado because he was concerned about whether the money should go through his (defendant's) account before paying Williams, or whether it could be paid directly by Mr. Corley. *Id.* at 148. Mr. Corley called Mr. Corrado to make sure that it was acceptable to make the Williams payment with proceeds of the art sale, and Mr. Corrado told Mr. Corley, in consultation with defendant,[2] that the Williams payment and the art profit were both part of his business and that it was a "wash." *Id.* at 147. According to Mr. Corley, in other words, defendant acted on advice of his accountant and therefore in the belief that this deduction was legal.

Defense counsel explained that defendant's efforts to ensure proper recording of the Williams payment contradicted the government's theory that he was hiding the money from the IRS: "[T]his is incredibly important, the allegation by the Government is that this was used to pay a personal debt, and it was paid out of here so that there would be no record of it and no one would ever see it." *Id.* at 147. Mr. Corrado's advice was relevant to defendant's state of mind, as he was "the receiver" of the information. *Id.* at 150.

Later, after Mr. Corrado had testified for the government, counsel called Mr. Corley as a defense witness. He tried to elicit the same information, making the same offer of proof. Tr. 3/21/05 at 5-7 (attached). This time, because Mr. Corrado had since taken the stand, defendant argued that the evidence constituted a prior inconsistent statement by Mr. Corrado as an

[2] Defendant was in the room at the time.

additional ground for admission. *Id.* at 7 *et seq.* (attached). The proffer was again rejected. *Id.* at 10, 16.

Hearsay Issues

This excluded evidence falls in two categories: the advice given by Mr. Corrado to Mr. Corley and defendant; and the statements made by defendant to Mr. Corley seeking that advice. The former – Mr. Corrado's advice – was not offered to prove the truth of its contents, *i.e.,* to prove that the Williams payment was in fact legally deductible from the art profit. It was offered, rather, to provide the context in which defendant thereafter signed his 1999 tax return – in counsel's words, to demonstrate "the receiver of the statement's state of mind as to why he did certain things." Tr. 3/16/05 at 150. Mr. DeSimone, in other words, signed the 1999 tax return in reliance on his accountant's statement that the Williams payment was properly deductible from the art profit.

This is what the First Circuit has called "a familiar category of non-hearsay," *i.e.,* "statements offered, not for their truth, but for their effect on the hearer." *United States v. DeVincent,* 632 F.2d 147, 151 (1st Cir. 1980). "The hearsay rule does not pertain to statements adduced merely to show … that they had some effect on the future actions of the listener." *United States v. Castro-Lara,* 970 F.2d 976, 981 (1st Cir. 1992). *Accord, United States v. Flemmi,* 402 F.3d 79, 93 n.21 (1st Cir. 2005); *United States v. Brassard,* 212 F.3d 54, 58 (1st Cir. 2000); *United States v. Murphy*, 193 F.3d 1, 5 n.2 (1st Cir. 1999). This rule applies in particular where out-of-court statements are offered to explain the listener's later motives. *United States v. Bailey,* 270 F.3d 83, 87 (1st Cir. 2001).

In *United States v. Yefsky,* 994 F.2d 885 (1st Cir. 1993), this issue came up in a context similar to this one. Defendant Yefsky had been charged with conspiracy to evade taxes. The

trial court had excluded testimony by his agent that an alleged co-conspirator had given him tax advice on which he then relied. It was so obvious on appeal that this testimony was relevant and admissible to show defendant's "lack of intent to help [his co-defendant] evade taxes" that the government confessed error. *Id.* at 897.

The excluded testimony was similarly relevant and admissible here. The government told the jury that the Williams payment should have been reported as income because it was not an expense associated with the art sale. Tr. 3/16/05 at 35. According to attorney Corley, however, defendant's accountant had told him the opposite, *i.e.*, that both were business-related and that the two together were a "wash." *Id.* at 147. Whatever the truth of the matter, if believed, Mr. Corley's testimony demonstrated that defendant did not know the deduction was illegal. This was powerful evidence that he did not act "willfully" under *Cheek* in making this deduction on his 1999 return.

The second category of excluded testimony -- defendant's statements to Mr. Corley -- fall into two sub-categories. First, there is Mr. Corley's testimony that defendant asked him whether the Williams payment was business-related and whether he could pay it out of his own account. Tr. 3/16/05 at 146-147. This was a request for assistance, which is never hearsay. "[T]here [can] be no 'truth' or falsity in a request for assistance." *United States v. Hicks,* 848 F.2d 1, 6 (1st Cir. 1988).

Such a request can, however, constitute conduct indicative of an innocent state of mind. "[W]henever [an] intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of a party." *Mutual Life Insurance Company v. Hillmon,* 145 U.S. 285, 295 (1892). Such statements are regarded as "verbal acts" and "are as competent as any other testimony, when relevant to the issue. Their

truth or falsity is an inquiry for the jury." *Id.* at 296, quoting *Insurance Co. v. Mosley,* 8 Wall. 397, 404, 405.

This request for assistance was highly exculpatory. If defendant was looking for professional assistance in determining how to handle the Williams payment properly in relation to the art sale, he was unlikely to be harboring an intention to evade his responsibilities to the IRS.

Then there is the second half of the statement attributed to defendant, *i.e.,* Mr. Corley's testimony that defendant asked him to call Mr. Corrado because he was concerned about whether the art profits had to pass through his account first before the Williams payment was made. Tr. 3/16/05 at 148. This testimony was hearsay: It was offered to prove that defendant was in fact concerned about propriety, just as he stated to Mr. Corley. Although hearsay, however, this evidence was subject to the exception under F.R.Evid. 803(3) for any "statement of the declarant's then existing state of mind, … (such as intent, plan, motive, design, mental feeling, …"[3]

This evidence fits into what the First Circuit has termed "'the least complicated situation involving mental state to which Rule 803(3) applies," *i.e.,* "when the statement is used to evidence a state of mind in issue." *United States v. Ouimette,* 753 F.2d 188, 192 (1st Cir. 1995), quoting 4 J. Weinstein and M. Berger, *Weinstein's Evidence,* § 803(3)[3] at 803-111 (1984) (footnotes omitted) (quoting Slough, *Spontaneous Statements and State of Mind,* 46 Iowa Law

[3] F.R.Evid. 803(3) makes an exception to the hearsay rule for:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Rev. 224, 230 (1961)). Defendant's mental state was clearly at issue in this specific intent crime. According to the First Circuit, therefore, under Rule 803(3), "one encounters little difficulty in justifying the admission of the declaration.'" *Id.*

Rule 803(3) has but a single qualification: a statement concerning mental condition is inadmissible if it is a "statement of memory or belief" offered "to prove the fact remembered or believed." F.R.Evid. 803(3). The dividing line between an admissible statement of intention or belief and an inadmissible one is thus a matter of temporal perspective. If the statement concerns "what [the speaker] was thinking in the present," it is admissible; if it concerns "what [the speaker] or someone else had done in the past," it is not. *United States v. DiMaria,* 727 F.2d 265, 271 (2nd Cir. 1984). *See, United States v. Cianci,* 378 F.3d 71, 106-107 (1st Cir. 2004) (upholding exclusion of 803(3) hearsay on the ground that the proffered out-of-court statement referred to past acts and events).

There is no other restriction. This Court, for instance, cannot refuse to admit a defendant's own out-of-court statement under Rule 803(3) on the ground that it is "self-serving." *United States v. Cordascia,* 951 F.2d 474, 487 (2nd Cir. 1991). A protest against self-serving evidence "is reminiscent of obsolete thinking excluding the testimony of interested parties." *Cross Baking Company, Inc. v. National Labor Relations Board,* 453 F.2d 1346, 1348 (1st Cir. 1971). Nor can the Court require defendant to take the stand himself to describe his own statements. *Ouimette, supra.*

Defendant's out-of-court statement was classic 803(3) evidence of his then-existing state of mind or feeling: He was expressing his concern that the art profit be handled properly. This statement was not offered to prove any past fact. *Compare, Cianci, supra.* Nor did it report any past feeling or intention. It was a pure statement of present mental condition. And it was a

mental condition that was central to the charged crime. Like the request for professional assistance, defendant's expression of concern that the money be handled properly was inconsistent with an intention to defraud the IRS. This excluded evidence was therefore highly exculpatory.

Prior Inconsistent Statements

The Corley testimony was offered for a second purpose as well. Mr. Corrado testified that defendant told him the three paintings were from his own collection, not part of his business, and that defendant had never told him he was using the art profits to make the Williams payment. Tr. 3/16/05 @ 208; Tr. 3/17/05 @19, 160 (attached). The proffered Corley testimony indicated the opposite: Mr. Corley called Mr. Corrado as defendant's agent and asked him if he could make the Williams payment with the art profit and Corrado said yes. Corrado told Corley that the art profits and the Williams payment were both business-related. Tr. 3/16/05 @ 146-148; Tr. 3/21/05 @5-7.

The government argued that the proffered Corley testimony was not inconsistent with Corrado's statement that he did not recall talking to Corley. Tr. 3/21/05 @ 7-8. This was beside the point. Mr. Corley's testimony *was* inconsistent with the substance of Corrado's claims, *i.e.*, with his assertion that defendant had misrepresented the art profit as personal and not business-related, and with his claim that defendant never told him the way the Williams payment was to be made. The content of Corrado's testimony conflicted with the content of Corley's, and, on that ground, it should have been admitted. An inconsistent statement "need not be 'in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict.'" *United States v. Malik*, 928 F.2d 17, 22 (1st Cir.

1991), quoting *United States v. Barrett,* 539 F.2d 244, 254 (1st Cir. 1971)(quoting *Commonwealth v. West,* 312 Mass. 438, 440, 45 N.E.2d 260, 262 (1942)).

**Due Process / Sixth Amendment**

When this Court curtailed defendant's cross-examination of Mr. Corley and refused to admit direct Corley testimony discrediting Corrado, it undermined defendant's ability to present a defense in violation of U.S.Const. Amends. V, VI. The Sixth Amendment right to confrontation "includes the right to conduct such cross-examination as is reasonably necessary to delineate and present the defendant's theory of the defense." *United States v. Molina,* 407 F.3d 511, 522 (1st Cir. 2005). *Accord, United States v. Mulinelli-Navas,* 111 F.3d 983 (1st Cir. 1997). If the limitations imposed on cross-examination "prevent [defendant] from developing his principal defense," those limitations impermissibly compromise defendant's constitutional rights. *Molina, supra* at 523-524.

In addition, if exclusion of the Corley direct under the prior-inconsistent-statement rule thwarted presentation of critical defense evidence, it is incumbent on the government to demonstrate that the rule was not arbitrary or disproportionate to the purpose it was designed to serve, and that the exclusion did not infringe on a weighty interest of the accused. *United States v. Scheffer,* 523 U.S. 303 (1998); *Rock v. Arkansas,* 483 U.S. 44 (1987).

The limitation on cross-examination did hamper presentation of a defense. Defense counsel argued in closing that defendant relied on Mr. Corrado and that he did not harbor an intention to violate the tax laws, but he was forced to render this argument in conclusory terms. Tr. 3/21/05 at 131. Counsel was not in a position to develop the argument further because he lacked the evidentiary building blocks which the Corley cross-examination would have provided. Thus deprived of the tools he needed to argue specific intent, defendant was unable to present his

full defense. The exclusion of the Corley cross-examination was therefore not just evidentiary error, but constitutional error as well.

It was constitutional error to exclude the Corley direct as well. Since Mr. Corrado was the government's main witness, defendant's interest in challenging his credibility through Mr. Corley was very weighty. A challenge to Corrado's credibility was at the heart of the defense. The proffer of a credible challenge to Corrado by a member of the bar with no reason to lie was one of defendant's most powerful tools for defending himself. Narrow interpretation of the rules of evidence deprived him of that tool in a way that was disproportionate and unfair.

**Prejudice**

When testimony is at "the core of the defendant's case," its exclusion is never harmless. *Ouimette, supra* at 193. *Accord, United States v. Detrich,* 865 F.2d 17 (2nd Cir. 1988); *United States v. Kohan,* 806 F.2d 18 (2nd Cir. 1986). The Corley testimony was at this core.

In addition, because the exclusion gave rise to constitutional error, reversal will be required unless the government can show that the error was not just harmless, but harmless beyond a reasonable doubt. *Mulinelli-Navas, supra.* "Under this standard, we may not declare a constitutional error harmless if there is a 'reasonable possibility' that the error influenced the verdict." *Id.* at 992.

Reversal should ensue under both these standards. The government was obliged to prove not only that defendant acted intentionally and voluntarily, but that he knew that what he was doing was against the law. *Cheek, supra.* The proffered Corley cross-examination rebutted this claim – and decisively so. Not only did this cross-examination show that defendant did not know the deduction was illegal. It showed that he had been assured by a professional accountant that the opposite was true: the debt was a legitimate deduction that offset the income.

The Corley evidence would have rebutted both of the government's allegations of falsity. It explained alleged under-reporting and it showed that Corrado had been told that the art profit was not personal. And, because the question of defendant's intentions was common to both allegations, a jury finding of good faith (or of reasonable doubt of bad faith) in relation to one allegation of falsity would have to have had a strong effect on the jury's conclusions concerning defendant's intentions in relation to the other.[4]

Then there is the fact that the jury acquitted defendant of two of the three crimes with which he was charged. These acquittals increase the likelihood that the jury might have been persuaded to acquit on the final charge had they heard the exculpatory intention testimony. *Detrich, supra.*

**Conclusion**

This Court need not engage in the "Catch-22" process of declaring itself in error in order to grant defendant bail pending appeal. *Bayko, supra* at 522-523. *Bayko* requires only that this Court conclude that the exclusion of the Corley cross-examination presents a "close question of law" or "one that very well may be decided the other way" on appeal. *Id.* at 523. For all the reasons limned above, defendant respectfully submits that this is such a question. Defendant therefore asks that this Court grant him bail pending appeal.

---

[4] Even if this Court concludes that the Corley testimony rebutted only one of the two allegations of falsity, it is not possible after the fact to determine on which allegation the jury rested its finding of guilt beyond a reasonable doubt. The First Circuit will therefore have to reverse even if this testimony affected only one of the two allegations of falsity. *United States v. Sawyer,* 85 F.3d 713, 730-731 (1st Cir. 1996).

Respectfully submitted,
ROCCO DESIMONE
By his attorneys,

KEVIN J. BRISTOW (#3984)
1309 Turks Head Building
Providence, RI 02903
(401) 521-2800

JOHN A. MACFADYEN (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090

CERTIFICATION

I hereby certify that I mailed a copy of this Memorandum to Luis M. Matos, Esq., Assistant United States Attorney, United States Attorney's Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903, on the 10th day of February, 2006.