UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                               )
                               )
United States of America       )
                               )
         v.                    )     CR. No. 04-80S
                               )
Rocco P. DeSimone              )
                               )
_____)
```

### MEMORANDUM OF DECISION ON DEFENDANT'S
### MOTION FOR BAIL PENDING APPEAL

Defendant Rocco P. DeSimone was convicted on March 21, 2005 of filing a false income tax return in violation of 26 U.S.C. § 7206(1). Filing a false tax return is a specific intent crime requiring proof that the Defendant had the "specific intent to violate the law." Cheek v. United States, 498 U.S. 192, 200 (1991); accord Tr. at 161, 3/21/05 (jury instructions). On August 12, 2005, the Court sentenced the Defendant to a term of imprisonment of 27 months. Defendant began serving his sentence on September 26, 2005.

Defendant has now filed a Motion for Bail Pending Appeal. Defendant contends in this motion that the Court erred in excluding certain portions of testimony of Richard Corley ("Corley"), the Defendant's attorney. Defendant claims that the evidentiary issues raised by this motion "raise[] . . . substantial question[s] of law or fact likely to result in . . . reversal . . . [or] an order a

for new trial . . . ." 18 U.S.C. § 3143(b)(1)(B). Specifically, the Defendant argues that the proffered testimony of attorney Corley was exculpatory because it suggested the Defendant signed his tax return believing that the return complied with the requirements of the tax code, that evidentiary errors at trial precluded the jury from hearing this exculpatory evidence, and reversal is likely to result.

After consideration of the arguments of counsel, and after hearing substantial oral argument, the Court concludes that there is a substantial question of law or fact sufficient to meet the standard set forth in <u>United States v. Bayko</u>, 774 F.2d 516, 523 (1st Cir. 1985) and, therefore, the Motion for Bail Pending Appeal is GRANTED.

I. <u>The Bail Standard</u>

Section 3143(b)(1)B) of Title 18 provides for bail pending appeal when an appeal raises "a substantial question of law or fact likely to result in - (i) reversal, [or] (ii) an order for a new trial . . . ." The Court of Appeals for the First Circuit has interpreted the term "substantial question" to mean "(1) that the appeal raise[s] a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." <u>Bayko</u>, 774 F.2d at 522.

2

In order for the Defendant to succeed on this motion, the Court is not required to conclude that it is likely to be reversed by the Court of Appeals. Rather, it is sufficient to find that there is a substantial question of fact or law and that the issue presented on appeal is a close one. The "possibility" of reversal is not sufficient; the Court must conclude that the question is "close." Id. at 523.

II. Facts Underlying the Offense

The Defendant brokered the sale of three works of fine art in 1999. On August 23, 1999, Michael Joyce purchased all three oil paintings for $8.3 million. The proceeds of the sale to Joyce were deposited into the trust account of the Defendant's attorney, Corley. Corley disbursed payments to the true owners of the paintings in the total amount of $5,765,000. He also disbursed payments for various obligations of the Defendant. Once his true expenses were deducted, the Defendant earned approximately $1,767,000 for his services. A portion of those proceeds were disbursed by Corley to several of the Defendant's creditors including an individual named Allen Williams ("Williams"). Williams received a payment in the amount $658,000. Corley testified that the payment of the $658,000 was made to the attorney for Williams in settlement of a lawsuit.

Michael Corrado ("Corrado") was the Defendant's accountant who prepared the Defendant's 1999 tax return. According to Corrado,

3

the Defendant did not advise him (Corrado) that he earned $1,767,000 from the sale of the three paintings; rather he showed Corrado a net deposit into his checking account of $1.1 million. Corrado also viewed a separate deposit into the Defendant's checking account of $45,000 which was characterized by the Defendant as a commission payment. The $45,000 deposit represented proceeds of the sale to Joyce. However, the Defendant did not advise Corrado that the deposit originated from the same transaction. Corrado correctly treated the $45,000 as Schedule C income based on the Defendant's characterization of the income as commission income.

According to Corrado's trial testimony, when he prepared the Defendant's tax return he (Corrado) asked the Defendant about the deposit. Corrado testified that the Defendant falsely told him that the deposit represented proceeds of the sale of paintings that the Defendant had owned for more than one year. In addition, the Defendant also represented that he had a $100,000 basis in the paintings. Based upon these representations, Corrado prepared the Defendant's tax return and reported $1,000,000 in income as a long term capital gain. The Defendant signed the tax return on October 16, 2000 and attested under penalties of perjury that the return was true, accurate, and complete.

4

III. Trial Rulings

The Defendant, confronted with the testimony of Corrado, attempted to present testimony from attorney Corley. The Government called Corley as a witness in its case on the second day of trial. On cross-examination, defense counsel elicited testimony from Corley that the $658,000 payment to Allen Williams was a "negotiated settlement between myself and Mr. Williams' attorney" for a lawsuit pending against the Defendant and another individual, named Kevin O'Coin. Tr. at 140-41, 143 3/16/05. According to Defendant's proffers, Corley would have testified that the Defendant told him (Corley) to call Corrado because he was concerned about whether the proceeds of the sale of the oil paintings should go through his (the Defendant's) account before paying Allen Williams, or whether it could be paid directly by Mr. Corley. Tr. at 148, 3/16/05. Corley would have testified that he called Mr. Corrado to discuss the issue and that Corrado told him that the Williams' payment and the art profit were both part of his business and therefore it was a "wash." Tr. at 147, 3/16/05. The Corley testimony precipitated vigorous objection and considerable discussion between the Court and counsel.

During this extensive discussion, two different objections were identified and considered by the Court. The first objection by the Government was that the testimony was effectively not hearsay because it was "party-opponent testimony" under

5

801(d)(2)(A). The Government argued that only it (the Government) was allowed to elicit testimony of a party-opponent (the Defendant) through his agent, attorney Corley. The second objection concerned the improper use of the Corley hearsay testimony about what Corrado said to impeach Corrado's anticipated testimony in advance. The following exchange then occurred between counsel and the Court in which the Court granted the Government's objections, but gave defense counsel an opportunity to provide further authority and argument in support of his position:

>    THE COURT: I understand the two kinds of hearsay that you're eliciting. One is the hearsay of your client. Okay. The other is you're attempting to get statements of Corrado. Now, as to what did my client say to you, your objection is what?
>    MR. MATOS: It's a party opponent hearsay. He can't have his client testify through Corley. The Rules specifically prohibit that, your Honor. We're the only ones that can elicit hearsay of the defendant. It's hearsay. It's party opponent, and I move to strike the earlier answer that had that same problem with it when the Court overruled my objection. It's party opponent hearsay.
>    Mr. Bristow knew exactly what the question was. Mr. Bristow asked Mr. Corley what his client had said to Mr. Corley in regards to the check, and Mr. Corley said that he had asked him to call the accountant to determine the tax liability. So I move to strike that.
>    MR. BRISTOW: I don't think that's true, Judge. I think that I asked him -- the Government brought up all this information about the check and payment of this check. And respectfully, the Government has made certain allegations, and there's only

|  |  |
|---|---|
|  | certain ways that I can confront and address those allegations. |
| THE COURT: | This is perhaps the other aspect of this, that Corrado -- seems to me what you're trying to do is the same thing we got into yesterday in trying to impeach Corrado in advance. You haven't asked Corrado these questions. |
| MR. BRISTOW: | Right. I raise them in anticipating that he's going to deny it, because he hasn't told the truth about anything yet. |
| THE COURT: | He hasn't testified. He may well confirm what you say. He may not. But how can you impeach him in advance? As far as the -- |
| MR. MATOS: | It's under the 400 series. 402, I believe. |
| THE COURT: | 402? |
| MR. MATOS: | I'm sorry, your Honor. |
| THE COURT: | 804? Where? |
| MR. MATOS: | Could I get my own? |
| THE COURT: | Yes. |
| MR. MATOS: | 801. His statement doesn't fall -- I'm sorry. |
| THE COURT: | Tell you what -- |
| MR. MATOS: | The statement doesn't fall within any of the exceptions, your Honor. |
| THE COURT: | What part of this are you saying -- |
| MR. MATOS: | What is not hearsay is an admission by a party opponent. When Mr. Bristow asks him, he's not asking about a party opponent. The case law is only a party opponent can ask hearsay -- |
| THE COURT: | I see your point. He's right. |
| MR. BRISTOW: | I'm asking him not for the truth. |
| THE COURT: | I think you are offering it for its truth. |
| MR. BRISTOW: | There could be things, Judge, that would be relevant but go to the receiver of the statement's state of mind as to why he did certain things. |
| THE COURT: | I'm going to take some more time with this. I'm going to sustain the objection for now. If you can come back to this at a break and show me why I'm wrong on that, then I'll reconsider, but I think they're right. |
| MR. BRISTOW: | I might even get it in through Corrado. |
| MR. MATOS: | I have a motion to strike. |

7

```
        THE COURT:     I know.  I'm going to grant it.
        MR. MATOS:     Thank you, your Honor.
        (End of side-bar conference.)
```

Later, the Defendant called Corley as his witness and the issue of Corley's testimony was once again discussed:

```
        Q.             Now, when you spoke with Mr. Corrado, did
                       you speak with him in person or by
                       telephone or by some other means?
        A.             By telephone.
        Q.             Could you please tell us what you said to
                       him and what he said to you.
        MR. MATOS:     Objection, your Honor.  Calls for hearsay.
        THE COURT:     Well, let's have you all come up.
        (Side-bar conference.)
        THE COURT:     I want you to do this on the record
                       because we talked about this in chambers.
                       I want you to make an offer of proof as to
                       what he would say.
        MR. BRISTOW:   Mr. Corley will say that he contacted
                       Michael Corrado by telephone to ascertain
                       the tax consequences of making this
                       $658,000 payment directly from his account
                       rather than from the defendant's own
                       business account, that Mr. Corrado told
                       him that because this was a payment of a
                       business-related matter that the matter
                       was deductible and that it was a wash.  It
                       did not need to be reported as income on
                       his return.  It could be paid directly by
                       Corley.
        THE COURT:     Okay.  Why does this stay out?
        MR. MATOS:     Because it's hearsay, your Honor.  It's
                       hearsay, because it's not a prior
                       inconsistent statement.  During his
                       cross-examination, Mr. Bristow asked him
                       if he spoke with Mr. Corley, then he asked
                       the question did you ever tell the
                       defendant's attorney that the $658,000
                       payment could be paid through the account
                       as an allowable business expense.  And Mr.
                       Corrado said "I don't recall ever speaking
                       with Attorney Corley."  Mr. Bristow asked
                       the question again in a different manner.
                       He said, "I don't recall ever speaking
                       with Attorney Corley."
```

8

|||
|---|---|
| | There's no testimony -- he doesn't recall, your Honor, speaking with him. That's the first prong. It could be arguably inconsistent as whether he spoke. But the first prong is he said he didn't recall speaking with Corley. He never testified as to whether he had that conversation. He never denied that conversation. He never denied that he told that to Mr. Corley. So it's clearly hearsay, your Honor. |
| THE COURT: | What exception is it? |
| MR. BRISTOW: | It's prior inconsistent statement, Judge, a failure to recall, an inability to recall is the same as a denial for purpose of introducing the prior inconsistent statement. I've seen that since I've started looking at this case. |
| MR. MATOS: | I have a case that I can cite to the Court I can bring up, your Honor. |
| THE COURT: | What is it? Do you have it? |
| MR. MATOS: | Yes. |
| THE COURT: | Go get it. |
| MR. MATOS: | Your Honor, I did some quick research over the weekend. It's a civil case -- I also have a criminal case from another circuit. The civil case is <u>Westinghouse versus Wray Equipment</u>, 286 F.2d, 491 to 493, your Honor, at Headnote 1 and 2. |
| MR. BRISTOW: | You're on the civil case? |
| MR. MATOS: | Yes, I am. |
| THE COURT: | What's the other case? |
| MR. MATOS: | The other case, your Honor, is Fifth Circuit case, <u>United States versus Divine</u> at page 82. The citation for the record is -- |
| THE COURT: | I don't need that. You have exactly what Corrado said about this? Do you have the transcript? |
| MR. MATOS: | I have my notes. What I have, your Honor, these were notes that were taken by someone else on my behalf. With that preface, Corrado was asked: "Did you ever tell the defendant's attorney that the $658,000 payment to Allen Williams could be paid through an attorney account as an allowable business expense?" |

9

|||
|---|---|
| | Mr. Corrado responded: "I don't recall ever speaking with Attorney Corley." And then he asked another question: "That includes telling Corley that payment to Allen Williams would be a wash, could be paid directly from an attorney client account? I don't recall ever speaking with Corley." |
| THE COURT: | That's consistent with my recollection. I think that's accurate. |
| MR. BRISTOW: | That's my recollection as well, Judge. But I believe -- I've read what's been put before me here. I know a failure to recall a specific aspect of a conversation is tantamount to a denial as it relates to the use of a prior inconsistent statement. I've looked at these cases. |
| THE COURT: | That's not what this case says. |
| MR. BRISTOW: | Are you talking about the Fifth Circuit case? |
| THE COURT: | No. I'm talking about the First Circuit case. It says -- I understand what you're saying. I understand your theory, but I don't think that's what the case says. He says he doesn't recall. He's not saying "I deny having said that." You want to use the hearsay evidence as extrinsic evidence of a prior inconsistent statement. And that case says that's not a denial. So you can't put this in to rebut it. I'm going to uphold the objection. I know you can except to it. |
| MR. BRISTOW: | It's not just that, Judge. I mean, you don't draw a factual distinction -- I'm asking the Court if they would consider drawing a factual distinction between someone not recalling an entire -- Corrado says, "I never talked to Attorney Corley." Now, certainly Corley's capable of coming in and saying, Yes, he did. I spoke to him on this date about this matter. That's -- Corrado says that, Corley rebuts that. What I'm asking -- |
| THE COURT: | He didn't deny having a conversation. He said I don't recall speaking to any lawyer. I recall this testimony very clearly, and those notes are consistent with my recollection of it. He said I |

10

|||
|---|---|
| | don't recall speaking to the lawyer. It's a lack of recollection. It's not a denial. You want me to equate the two. It's close, but it's not a denial. And even if it was a denial, you might be able to use Corley's testimony to say that he had the conversation, but you can't get to the next question, which is what did he say, because he didn't say anything about - Corrado didn't say anything about it. |
| MR. BRISTOW: | No. He was asked specifically those questions, and he said -- he just kept repeating his answer, which was that he didn't have any recollection of speaking with an attorney. |
| THE COURT: | Right. He can testify as to what he said, but he's already done that. Corley can testify as to what he said, but he's already testified to that the first time on the stand. |
| MR. BRISTOW: | Okay. Well, you say first time, you mean -- |
| THE COURT: | When he was on in the Government's case, I think he testified as to what he said. |
| MR. BRISTOW: | I don't think I got that far, Judge, respectfully. |
| THE COURT: | You can ask him that. Even that he can testify to. |
| MR. MATOS: | My problem with that, your Honor, is I have a concern for foundation is I think it's in the court statement and if it's because the defendant said call my accountant and ask him, then it's a party statement and he can't ask party statements. Only I can ask party statements. It's a party admission. It's hearsay. It's the same concept we had earlier about whether Mr. Bristow's conversation with -- |
| THE COURT: | He's not testifying as to what his client told him to do. He is testifying -- he can ask him the question without saying what Corrado said to you in this conversation that you had with Corrado, what did you tell him about what to do with the Allen Williams' check, or what did you tell him about X. I think he can testify as to that. |

11

MR. MATOS:    That's hearsay, your Honor. It's just another way of trying to impeach Mr. Corrado with a statement that doesn't exist. It's an out-of-court statement offered for the truth of the matter asserted. And if it's done on his client's behalf, it was the defendant's statement. He was representing the defendant at the time, and the hearsay rule does not allow the defendant's out-of-court statements to be introduced unless the party opponent has asked for them. That's the issue we discussed earlier.

MR. BRISTOW:  He never said he called at the defendant's request. He's going to talk about a conversation, his half of a conversation with Corrado. And that's what I'm limited to, respectfully, Judge.

THE COURT:    Yes. So what you're saying is this is a hearsay statement of a party, and it's not party opponent so it can't come in?

MR. MATOS:    Exactly, your Honor. When I wanted to bring Mr. Bristow's statement, I briefed that to the Court, that we could bring it in, because he was representing -- I'm not trying to reargue that, your Honor, but it's the same concept.

THE COURT:    Well, do you have any authority for that, for this one?

MR. MATOS:    Yes, your Honor. I provided it to the Court in the past. I'm not sure I have it with me today. When we briefed the matter to the Court about whether we could bring in Mr. Bristow's statement to Corrado about, you know, I don't believe him, in the materials I provided to the Court there was one letter -- I apologize. I don't have it here today. There are citations in there and a statement of an attorney representing an individual comes in as a party opponent statement. It's the same logic as to why it doesn't come in in his case, because it's a statement that I think the Rule mentions that party opponent statements are statements that are made by someone who is also representing them. And that's what Mr.

12

|              |                                                                                     |
|--------------|-------------------------------------------------------------------------------------|
| | Corley was doing. He was acting in the defendant's representative capacity. |
| THE COURT: | I think he's right. I think he's right. There's no independent status for him to be speaking to Corrado. He's acting as his representative. |
| MR. MATOS: | I think the issue, your Honor, is whether he is doing that of his own initiative. Whether or not he is doing that at the request of the defendant so, therefore, he is acting or speaking -- |
| MR. BRISTOW: | Judge, I have never seen that Rule used in a criminal case, and I understand, and I have seen civil cases or statements that are made in pleadings or statements that are attributed to a counsel's representative in a civil case are, or can be utilized by the other side as a statement by a party opponent. I thought -- there's just been so many issues we discussed, but I thought that when we were looking at this issue previously, that there were admonitions relating to this being applied in a criminal context. I thought. |
| | Now, I didn't bring this stuff as part of my files today, but I thought that's what we had done because, you know, the logical conclusion in a criminal defense attorney having a conversation with anyone in a non-court context relating to the merits of their case or something about evidence or something about factual guilt, and if that information were known to the Government, that being introduced as a statement against the accused in the case, I never heard of it, never read it in any book text situation, research that I've ever done. And I think that's because it's my understanding that the attribution of the statement of a representative of a party opponent, the defendant in a criminal case, is used startingly and sparingly in the criminal context, if at all. And I thought that's what we looked at before. |
| THE COURT: | Right. I don't want to spend any more time on this. I think he's right on the |

13

```
                    Rules.  I just -- you can take exception
                    to it.
     MR. BRISTOW:   Okay.  I do.
     (End of side-bar conference.)
     THE COURT:     Let's have the last -- well, I'm going to
                    sustain the last objection as to the last
                    question.  You can go on.
```

As a result of these rulings, Corley was precluded from testifying: (1) about what Corrado allegedly said to him about the payment of the Williams debt; and (2) that the Defendant allegedly asked Corley to find out from Corrado how to handle the Williams payment.

IV. <u>Discussion</u>

Defendant claims that the evidence excluded falls into two categories. First is the advice given by Corrado to Corley (and, inferentially, the Defendant); the second concerns statements made by the Defendant to Corley seeking that advice. With respect to the statements of Corrado, the Defendant argues that his (Corrado's) statements to the effect that the Williams payment was a wash against business income were offered not to prove the truth of the contents of the statements, but rather to show Defendant's state of mind when he signed the 1999 tax return. The second ground for admission of Corrado's statements is that they are prior inconsistent statements that were admissible under Rule 613. In this regard, Defendant argues that the statements were not merely offered to contest Corrado's lack of recollection of a phone call with Corley, but rather to rebut the testimony of Corrado to the

14

effect that the Defendant had misrepresented the art profit as a personal as opposed to business-related expense. The Defendant argues that the content of Corrado's statements to Corley was directly contradictory to the content of Corrado's testimony at trial regarding how the Defendant characterized the profit from the sale of the paintings.

On the second hearsay question (the statements of the Defendant to Corley), the Defendant, relying on United States v. Hicks, 848 F.2d 1, 3 (1st Cir. 1988), argues that these statements as well should have been admitted because they were a request for assistance which, the Defendant contends, is never hearsay. In addition, the Defendant contends that the statement is admissible under Fed. R. Evid. 803(3) as evidence of state of mind.[1] Implicitly, the Defendant challenges the Government's contention, which the Court agreed with, that only the Government could elicit the testimony of a party-opponent through his agent.

The Government argues that the Court's rulings at trial were all correct and that the testimony was properly excluded. In addition, the Government invokes the teachings of the Supreme Court's decision in Griffin v. United States, 502 U.S. 46 (1991) to argue that the Defendant is unable to show his appeal is likely to

---

[1] Fed. R. Evid. 803(3) makes an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ."

result in reversal or an order for a new trial because the Defendant's evidentiary points of error only concern the misreported income amount of $658,000. And, so the argument goes, irrespective of the excluded evidence, the jury's verdict will not be reversed because the jury had sufficient evidence to convict the Defendant on the following independent theories: (1) that the Defendant's tax return incorrectly reported long term capital gains in the amount of $1,000,000; and (2) that the Defendant still misreported his income by approximately $64,000.

Defendant essentially has a two-fold rejoinder. First, he claims that Corley's testimony did not just relate to the misreported $658,000, but that it also affected the misclassification theory because it showed that the Defendant simply made a mistake when he signed his return while at all times relying on Corrado's advice. (Similarly, the Defendant urges that the exclusion of Corley's testimony added an overarching fraudulent taint to the Defendant's conduct and undermined a defense of good faith reliance on his accountant.) Second, the Defendant asserts that the Government's reliance on <u>Griffin</u> and its progeny is misplaced because the instant appeal does not involve a question of evidentiary sufficiency. Rather, the Defendant proposes that the evidentiary rulings invoke questions of legal sufficiency because they were made outside of the jurors' presence and deprived the jury of a fair opportunity to balance all of the evidence. <u>See</u>

16

generally <u>Griffin</u>, 502 U.S. at 58-59 (distinguishing treatment of cases involving convictions resting upon a basis not supported by the evidence from those concerning convictions possibly resting on an invalid ground as a result of an error of law). Without expressing a view on the ultimate merits of this debate, the Court finds that at this stage, the Defendant has raised close questions which, if resolved in his favor on appeal, are likely to result in reversal or an order for a new trial.

Ultimately, a number of close questions may need to be resolved on appeal, including questions of whether the Defendant adequately set forth his reasoning at trial for why Corley's testimony should have been admitted. Moreover, depending on whether the Defendant passes this hurdle, then the question will be whether Corley's testimony should have been admitted on these grounds, or upon grounds that were not raised at trial. And of course, there is the question of whether the error (if any) was in fact harmful. The Court has received considerable argument on all of these points. At this stage of the proceedings, it is not for this Court to become an advocate for its prior rulings; nor is it appropriate to express a view about whether an error occurred. It is enough if the questions are close, and they are. All of these close questions (preliminary though some of them may be) could be critical and should be left to the Court of Appeals. And while the Government will no doubt argue in the Court of Appeals that the

17

Defendant failed to adequately press certain legal theories at trial, it is enough at this stage to show that these are close questions of law, likely to result in reversal or an order for a new trial.

V. Conclusion

For purposes of this motion, it is sufficient that the Defendant has demonstrated the existence of close questions of law under Bayko that if determined favorably to the Defendant, are likely to result in reversal or an order for a new trial. Given this showing, and because the Court concludes that there is no risk of flight or risk of harm to the community, the Defendant's motion is GRANTED and the Defendant is released on bail, subject to a $100,000 surety bond. Additionally, the Government's request for a three-week stay of this decision is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
United States District Judge
Date: 3/22/06